UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTWON FLINT,

        Petitioner,

    v.                                              Case No. 19-C-411

MICHELLE HOFFMAN,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR § 2254 RELIEF

Petitioner Antwon Flint, who is currently incarcerated at Kenosha Correctional Center, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In September 2014, a Kenosha County jury found Flint guilty of armed robbery with use of force as a party to the crime, and the trial court later sentenced him to seven years imprisonment followed by seven years of extended supervision. Flint had previously been brought to trial on this same charge in June 2014, but the trial judge granted the prosecutor's motion for a mistrial during the defense's opening statement. Flint asserts in his amended petition that, because there was no manifest necessity for the Kenosha County Circuit Court to grant the prosecutor's request for a mistrial, his second trial violated his constitutional right against double jeopardy. For the following reasons, Flint's petition will be denied.

**BACKGROUND**

On July 10, 2012, four men robbed a liquor store in Pleasant Prairie, Wisconsin after spraying the clerk with pepper spray. Although the clerk could not identify anything about the robbers as a result of the pepper spray, a surveillance camera recorded the event. Based upon the

surveillance videos from both robberies, police identified Paris Williams, Kenneth Cooper, and Cortez Holliman as the perpetrators of the robberies. A similar three-man robbery occurred hours later at a gas station in Antioch, Illinois. Cooper advised Pleasant Prairie police that he, Williams, Holliman, and Flint robbed the Pleasant Prairie liquor store. Although Flint denied his involvement to police, he was charged with armed robbery by use of force as a party to the crime, and his case proceeded to trial.

The trial began on June 16, 2014, and the jurors were selected on the first day of trial. On the second day, the jurors were sworn and counsel proceeded with opening statements. The prosecutor presented the State's opening statement in which he told the jury that Cooper was cooperative with law enforcement and would talk at trial about his and Flint's involvement in the case. The State noted that Cooper told officers that the fourth robber appeared to him to be Antwon Flint, his "friend since boyhood." Dkt. No. 34-7 at 22:8–9. Defense counsel began Flint's opening statement by questioning Cooper's initial identification of Flint and noting that only three of the four robbers were "readily identifiable" in surveillance-camera footage: "Cooper, the State's witness; Holliman and Williams, both of whom are now deceased." Dkt. No. 34-15 at 5:7–8. She told the jury that Flint was innocent and that the jury would hear that he was in Rockford at the time of the robbery. *Id.* at 4–5. Flint's counsel continued:

> Now, two months after the robbery the police find my client and interview him. My client, thinking that he's being cooperative, talks to them, says, yes, I know Kenneth Cooper; he and I have been childhood friends.

*Id.* at 5:21–24. The State objected that counsel's recounting of Flint's out-of-court statement to police about his relationship to Cooper was inadmissible hearsay. Arguing that Flint could not introduce his own hearsay statements, the prosecutor moved for a mistrial. The trial court, Judge

2

Anthony Milisauskas presiding, granted the prosecutor's motion, released the jury, and rescheduled the trial. *Id.* at 9:11–14.

The case was set for a second trial before Judge Bruce E. Schroeder on September 8, 2014. On the morning of the first day of the second trial, Judge Schroeder raised the issue of double jeopardy *sua sponte*. The court noted that jeopardy had attached at the first trial and that, while there had not been a motion on this prosecution, it wanted to make sure that there was a manifest necessity for a mistrial at the time it was declared in the first trial. Dkt. No. 28-3 at 11:24–12:03. The parties explained their respective positions regarding the mistrial. The prosecutor claimed counsel for the defendant had recounted an inadmissible hearsay statement her client had made during his interview with law enforcement during her opening statement. *Id.* at 9:23–10:03. Counsel for the defendant countered that the mistrial was "inappropriate" and that she simply said her client was trying to be cooperative. *Id.* at 10:10–20. In an effort to resolve the discrepancy in what the attorneys were saying, Judge Schroeder inquired about the possibility of getting a transcript of the first trial. "Ultimately," Judge Schroeder explained, "the decision is now mine." *Id.* at 12:07–08. At the same time, the judge noted, "The defendant doesn't have to make a new motion just because there is a new judge on the case." *Id.* at 12:08–10.

When it appeared no transcript was readily available, the court indicated it would proceed to question potential jurors and obtain a transcript of the relevant portions of the first trial later. After the jurors were selected, the judge advised that it looked as if he would not be able to get a transcript of the first trial that day, so he had called Judge Milisauskas to find out what he remembered about the first trial. Judge Schroeder reported that Judge Milisauskas indicated that defense counsel had gotten into particulars of Flint's statements during the opening argument, although he acknowledged that Judge Milisauskas did not specify what statement was recounted.

3

Judge Schroeder then instructed counsel for the defendant that "in order to pursue that motion you would need to procure a transcript." *Id.* at 106:03–05. Judge Schroeder observed that he could not imagine it would be an enormous obligation, since they were only talking about "a paragraph or two," but nevertheless stated it would be defense counsel's obligation, "if you're making any kind of motion on this score, to do so now before we invest this kind of time in a trial and also to carry your burden." *Id.* at 106:07–12. When asked if there was anything else, both attorneys responded "no." *Id.* at 106:13–15.

The next morning, before the jury was sworn, Judge Schroeder stated that he had been able to get a partial transcript of the first hearing and had determined that the declaration of a mistrial was proper. He explained that he was therefore not apprehensive about retrying the case. The jurors were subsequently sworn in and the trial proceeded. The jury ultimately found Flint guilty.

Flint filed a motion for postconviction relief, arguing that (1) a mistrial was improperly granted in the first trial and that his conviction should be vacated on double jeopardy grounds; (2) alternatively, he should get a new trial because the circuit court erred by allowing the jury to watch the surveillance camera footage unsupervised; and (3) trial counsel was ineffective by not adequately preserving the two issues. The trial court denied the motion without a hearing. Flint raised the same arguments on appeal. The Wisconsin Court of Appeals concluded that Flint had "forfeited" the two claims of court error and that Flint's trial counsel was not ineffective in part because, even if Flint had moved to dismiss on double jeopardy grounds, the motion would have failed because the mistrial was properly granted. Flint subsequently filed a petition for review, which the Wisconsin Supreme Court denied on November 13, 2018.

Flint filed his petition for writ of habeas corpus in this court on March 20, 2019. The court screened the petition on April 25, 2019, and, based upon the allegations in the petition, directed

4

the respondent to file an answer or motion to dismiss. On August 1, 2019, the respondent filed a motion to dismiss asserting that the petition was procedurally defaulted. On August 30, 2019, the court found that the issue raised by Flint merited the appointment of counsel pursuant to 18 U.S.C. § 3006(A)(a)(2)(B). Counsel was subsequently recruited for Flint, and, on October 16, 2019, Flint filed a motion for leave to file an amended petition. The court granted the motion on October 17, 2019, screened the amended petition, and allowed Flint to proceed on his claim that his right not to be twice held in jeopardy for the same offense was violated, contrary to the Fifth Amendment's Double Jeopardy Clause and *Arizona v. Washington*, 434 U.S. 497, 503 (1978). The respondent moved to dismiss the amended petition, arguing that Flint's claims were procedurally defaulted. The court denied the respondent's motion to dismiss on February 20, 2020.

## ANALYSIS

Flint's petition for federal relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the United States Supreme Court, or was "based on an unreasonable application of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

5

A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" when it is so clearly incorrect that it would not be debatable among reasonable jurists. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." (internal quotations and brackets omitted)). The determination of a factual matter made by a state court is presumed to be correct, and that presumption can be overcome only by clear and convincing evidence. § 2254(e)(1); *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019) ("The petitioner must show by clear and convincing evidence that the findings were unreasonable."). Although habeas courts cannot "second-guess the reasonable decisions of state courts," *Renico v. Lett*, 559 U.S. 766, 779 (2010), "deference does not imply abandonment of or abdication of judicial review . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) ("[A] decision involves an unreasonable determination of facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.").

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Flint argues that his second trial violated his right against double jeopardy because the court in his first trial declared a mistrial in the absence of manifest necessity. "The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth, provides

6

that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Brown v. Ohio*, 432 U.S. 161, 164 (1977). "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal." *Arizona v. Washington*, 434 U.S. 497, 503 (1978). Where the accused has been acquitted, the protection afforded by the clause is at its strongest: "If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." *Id.* Of course, that did not happen here. Flint was not acquitted at his first trial; a mistrial was declared.

The protection afforded by the Double Jeopardy Clause also extends to cases where the first trial is terminated before a verdict is returned:

> Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's "valued right to have his trial completed by a particular tribunal." The reasons why this "valued right" merits constitutional protection are worthy of repetition. Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Id.* at 503–05 (footnotes omitted).

But unlike the situation in which the defendant's first trial resulted in an acquittal, a retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. "Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Id.* at 505. At the same time,

7

because of the importance of the protection against a second trial, and the fact that it is frustrated by any mistrial, the Court has held that the prosecutor must shoulder a heavy burden of justifying the mistrial if he is to avoid the double jeopardy bar. *Id.* "The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.*

Under the manifest necessity standard, a trial court may declare a mistrial only if a "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States v. Jorn*, 400 U.S. 470, 485 (1971). The Supreme Court has cautioned that "manifest necessity" is a high degree of necessity, *see Washington*, 434 U.S. at 506, and that the power to grant a mistrial should be used "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *United States v. Perez*, 22 U.S. 579, 580 (1824).

Reviewing courts afford considerable deference to a trial court's decision to declare a mistrial. *See Washington*, 434 U.S. at 506 (noting that the "manifest necessity" standard cannot "be applied mechanically or without attention to the particular problem confronting the trial judge"). "A trial court's failure to explicitly find manifest necessity or examine alternatives to a mistrial . . . does not render the ruling constitutionally defective so long as the record provides adequate justification for the trial court's ruling." *Camden v. Circuit Court of Second Judicial Circuit, Crawford Cty., Illinois*, 892 F.2d 610, 614 (7th Cir. 1989) (citing *Washington*, 434 U.S. at 516–17). In applying AEDPA deference, the question before the court is neither "whether the trial judge should have declared a mistrial" nor "whether it was an abuse of discretion for her to have done so—the applicable standard on direct review." *Renico*, 559 U.S. at 772. Rather, the question under AEDPA is "whether the determination of the [state appellate court] that there was no abuse of discretion was 'an unreasonable application of . . . clearly established federal law.'"

8

*Id.* at 772–73 (quoting § 2254(d)(1)). Flint asserts that, although the court of appeals is entitled to AEDPA deference on this issue, its conclusion that the trial court did not abuse its discretion in declaring a mistrial was an unreasonable application of the clearly established federal law set forth in *Arizona v. Washington*.

In *Washington*, after the defendant was found guilty of murder, the Arizona trial court granted a new trial because the prosecutor withheld exculpatory evidence from the defense. At the second trial, defense counsel told jurors that the defendant was being retried because the prosecutor purposefully hid evidence from the defense in the first trial. 434 U.S. at 498–99. The State moved for a mistrial based on defense counsel's "improper and prejudicial" remarks. After hearing argument from the parties, the court denied the motion. The State renewed the motion the following day and, after extended argument, the court declared a mistrial. *Id.* at 501. Although the court did not expressly find "manifest necessity" or indicate that it had considered alternative solutions, it concluded that the statements were irrelevant and inadmissible. The defendant filed a petition for writ of habeas corpus alleging that a new trial would violate the Double Jeopardy Clause. The Ninth Circuit, in affirming the district court's grant of the writ, concluded that, although defense counsel's statement was improper, the trial court failed to find a "manifest necessity" or address other alternatives. *Id.*

The United States Supreme Court reversed, holding that the Court of Appeals applied an incorrect standard of review to the mistrial ruling. *Id.* at 503. The Court explained that, where the mistrial was declared based on improper and prejudicial remarks made by defense counsel that may have affected the impartiality of the jury, an appellate court should "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at 511. It observed that "[a]n improper

9

opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal" and that "such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted." *Id.* at 512.

The Court observed, however, that "[o]ur conclusion that a trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference does not, of course, end the inquiry." *Id.* at 514. "In order to ensure that [the defendant's constitutional] interest is adequately protected," the Court recognized that "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial. Thus, if a trial judge acts irrationally or irresponsibly, his action cannot be condoned." *Id.* (citations omitted).

The *Washington* Court held the trial court had not abused its discretion in declaring a mistrial. In reaching this result, the Court rejected the argument that, because the trial court "failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion," none existed. *Id.* at 517. The Court reasoned that the basis for the trial court's mistrial order was "adequately disclosed by the record, which include[d] the extensive argument of counsel prior to the judge's ruling." *Id.*

In this case, the trial court granted the prosecutor's motion for a mistrial based on what the prosecutor asserted was defense counsel's inclusion of inadmissible hearsay in his opening statement to the jury. Counsel recounted how Cooper, the State's chief witness, came to link Flint to the robbery. Referring to the interview police then conducted with Flint two months after the robbery occurred, counsel stated: "My client, thinking that he's being cooperative, talks to them, says, yes, I know Kenneth Cooper; he and I have been childhood friends." Dkt. No. 34-15 at 5:22–24. It was at that point that the prosecutor asked to approach the bench and entered his objection.

10

Case 1:19-cv-00411-WCG   Filed 11/03/20   Page 10 of 15   Document 42

After the jury was excused, the prosecutor placed his objection on the record. The prosecutor noted that the defendant's prior statement was admissible only if the State sought to introduce it, which it did not plan to do. *See* Wis. Stat. § 908.01(4)(b). As a result, the prosecutor argued, counsel's reference to the statement in her opening statement was improper. The prosecutor argued that counsel had referenced the statement in an obvious attempt to indicate to the jury that her client was cooperative and that he acknowledged facts that were helpful to the defense. The only remedy available to the court, the prosecutor argued, was a mistrial. Dkt. No. 34-15 at 6:22–7:05.

Flint's attorney denied that her opening statement was improper. She noted that the statement that Flint and Cooper were childhood friends actually corroborated what the prosecutor had told the jury the evidence would show and would be acknowledged by multiple witnesses in the case. Her statement that Flint cooperated, she argued, was consistent with the prosecutor's statement that the detective wasn't able to talk to Flint until two months later. Counsel concluded, "I don't believe this is inappropriate and a mistrial is not appropriate at this time since this evidence is going to be presented to the jury through multiple witnesses." *Id.* at 7:22–8:13.

Noting that "we are at the opening statement," and that the defense had brought up a statement that was inadmissible hearsay, the trial court granted the prosecutor's motion for a mistrial and set a new trial date. *Id.* at 9:02–14. In essence, the court adopted the prosecutor's argument that a mistrial was warranted.

If this court had been the trial court, it would have denied the prosecutor's motion for a mistrial. While the content of Flint's statement to the police might have been inadmissible hearsay, the statement that Cooper and Flint were boyhood friends was hardly prejudicial. The prosecutor had said the same thing in his opening statement. Dkt. No. 34-7 at 22. Evidence that a defendant

was cooperative with police, on the other hand, is generally admissible. Such evidence is frequently offered to show lack of consciousness of guilt, though a trial court's refusal to admit evidence that the defendant gave an otherwise inadmissible statement to police to show such cooperation has been upheld. *See, e.g.*, *Stumpf v. Alaska*, 749 P.2d 880, 900 (Alaska Ct. App. 1988) ("Stumpf's cooperation with the police and the fact that he made a statement was relevant, albeit marginally, to establish a lack of consciousness of guilt. Admission of this evidence, however, could obviously cause the jury to speculate on the substance of Stumpf's statement. Stumpf's statement to the police would normally be inadmissible evidence. . . . We conclude, therefore, that the trial judge could properly hold that the prejudicial impact of the fact that Stumpf made a statement outweighed any marginal probative value of this evidence."). Regardless of whether counsel's statement recounted inadmissible evidence, however, the trial court had already instructed the jury that what the attorneys said in their opening statements was not evidence, and there is no reason to believe that sustaining an objection and reminding the jury of that instruction would not have been sufficient to eliminate the potential harm. Thus, in this court's view, there was no manifest injustice that warranted granting the prosecution's motion.

But the question before the court, of course, is not what this court would have done. The question is whether the decision of the state court is contrary to, or an unreasonable application of, clearly established federal law. Under the highly deferential standards mandated by AEDPA, the court concludes that the Wisconsin Court of Appeals did not unreasonably apply federal law in concluding that the state trial court did not misuse its discretion in granting the State's motion for a mistrial.

Though the Wisconsin Court of Appeals found that Flint forfeited his double jeopardy claim, in addressing Flint's ineffective assistance of counsel claim, the court concluded that the

12

trial court had properly exercised its discretion in granting the State's motion for a mistrial. Dkt. No. 15-5 at ¶¶ 14, 20. The court explained:

> When considering a mistrial on the State's motion, the court should consider other alternatives before depriving a defendant of the valued right to be tried by the original tribunal. For example, it may instruct the jury to disregard the improper comment. While Judge Milisauskas did not expressly state that he considered giving a curative instruction, that does not mean he did not consider it. Further, that avenue will not necessarily remove the risk of bias that may be created by improper argument. Judge Schroeder similarly noted in his postconviction motion ruling that, while courts presume a jury will disregard statements when instructed to do so, for good reason, that is not an ironclad rule.
>
> Flint asserts an unsupported claim of prejudice from counsel's failure to move for dismissal based on double jeopardy. The case was in the opening arguments stage, not far into a trial that was going well for him. We must accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment. We are satisfied that the trial court properly exercised its discretion. A claim predicated on a failure to challenge a correct trial court ruling cannot establish prejudice. A motion to dismiss likely would have failed. An attorney is not ineffective for failing to make meritless arguments.

*Id.* ¶¶ 19–20 (internal quotation marks and citations omitted).

Flint asserts that neither the trial court nor the appellate court recognized that prejudice was an essential component of *Washington*'s mistrial standard and that neither court considered whether defense counsel's statement was prejudicial. But while neither court may have used the term "prejudice," the trial court implicitly found prejudice in granting the prosecutor's motion, and the appellate court likewise recognized such prejudice in affirming Flint's conviction. The trial court granted the mistrial in response to the prosecutor's argument that defense counsel had improperly introduced evidence of an inadmissible statement to thereby "indicate that he was cooperative and that he was acknowledging things that would be helpful to the defense." Dkt. No. 34-15 at 6:22–24. After defense counsel responded, the prosecutor continued, "The point is that now what the jury believes is that the defendant himself has in a cooperative gesture said that and

13

that's not permissible." *Id.* at 8:16–19. He concluded, "Counsel obviously has a strategic purpose to want to talk about what the defendant said. That's not allowed." *Id.* at 8:24–9:01. It was in response to this argument that the trial court granted the prosecutor's motion.

The Wisconsin Court of Appeals explicitly noted that "[a]n improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial jury." Dkt. No. 15-5 at ¶ 18 (quoting *Washington*, 434 U.S. at 512). Addressing the alternative of a curative instruction, the appellate court explained "that avenue will not necessarily remove the risk of bias that may be created by improper argument." *Id.* at ¶ 19. Ultimately, the court affirmed the trial court's ruling granting the prosecutor's motion, stating, "We must accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Id.* at ¶ 20. These statements demonstrate that the state courts considered the question of prejudice. Indeed, absent a claim of prejudice, the motion for a mistrial made no sense. The fact that the courts did not use that term does not render their decisions contrary to clearly established federal law.

*Washington* does not require explicit use of the word "prejudice." Instead, the Supreme Court has made clear that a trial court is not required to expressly consider alternatives to a mistrial or expressly make certain findings when the record provides adequate justification for the court's mistrial ruling. *Washington*, 434 U.S. at 517. Based on the record, the Wisconsin Court of Appeals concluded that the trial court properly exercised its discretion in declaring a mistrial. Although this court would have reached a different result for the reasons set forth above, the court cannot say that the Wisconsin court's determination was contrary to or an unreasonable application of clearly established Supreme Court law as that phrase has been defined. Flint's petition must therefore be denied.

14

## CONCLUSION

For the reasons given above, Flint is not entitled to federal habeas relief on his claim. His petition for writ of habeas corpus is therefore **DENIED**, and the clerk is directed to enter judgment dismissing the case. A certificate of appealability will be **GRANTED**. Reasonable jurists could believe that Flint has made a substantial showing of the denial of a constitutional right.

Flint is advised that the judgment entered by the clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
